| | |
|---|---|
| EDDIE TARDY, individually, and as Administrator of the Estate of LAEDDIE COLEMAN, *Plaintiffs*, v. CORECIVIC OF TENNESSEE, LLC, as owner and operator of HARDEMAN COUNTY CORRECTIONAL FACILITY, VINCENT VANTELL, CHANCE LEEDS, CARLISLA BYARS, KEITH HUGGINS, and HARDEMAN COUNTY, TENNESSEE, *Defendants*. | Case No. _____ JURY DEMANDED |

# COMPLAINT

For their Complaint against the Defendants, the Plaintiffs state to the Court and the Jury as follows:

## I. INTRODUCTION

1. On September 7, 2021, Laeddie Coleman was murdered in a severely understaffed, unsupervised pod at Hardeman County Correctional Facility, a private prison operated by CoreCivic of Tennessee, LLC ("CoreCivic").

2. Mr. Coleman's murder followed another near-fatal stabbing by just minutes. Despite prison officials being aware of the first stabbing, however, they took no action to secure the pod, to clear it of weapons, or to ensure that it was adequately staffed before Mr. Coleman's murder.

3. CoreCivic—which changed its name from Corrections Corporations of

America in 2017 after that name became synonymous with the most insidious aspects of America's private prison industry—is the nation's most notorious private prison operator. To maintain its profit margin—and as a result of its chronic and profit-motivated deliberate indifference to inmate health and safety—CoreCivic serially underinvests in prison staff, security, and inmate healthcare at its prisons, leading to predictable and horrific results.[1]

4. Due to CoreCivic's chronic and deliberate understaffing policies, Mr. Coleman's pod was left unsupervised prior to his murder. During this time, another inmate—Devin Jamison—was near-fatally stabbed.

5. On notice both generally that CoreCivic's understaffing policies result in extreme and preventable violence and specifically that its understaffing had resulted in near-fatal violence in Mr. Coleman's pod just minutes before his death, the Defendants still took no action to secure the pod, to ensure that all weapons had been removed from the area, or to ensure that it was adequately staffed to prevent retaliatory violence.

6. As a result, Mr. Coleman was murdered by at least three other inmates and left to bleed out on the ground before any prison staff responded.

7. This lawsuit—filed by Mr. Coleman's grieving father and the Administrator of his estate—seeks an award of damages for Mr. Coleman's wrongful death and for Mr.

---

[1] *See, e.g.,* Allison Kite, *For-profit Kansas prison an understaffed 'hell hole' of violence, death and drugs*, KANSAS REFLECTOR (Oct. 7, 2021), https://kansasreflector.com/2021/10/07/for-profit-kansas-prison-an-understaffed-hell-hole-of-violence-death-and-drugs/; Samantha Michaels, *The Feds Just Slammed One of the Country's Biggest Private Prison Companies—Once Again*, MOTHER JONES (April 26, 2017), https://www.motherjones.com/politics/2017/04/justice-department-audit-corecivic-marshal-service-leavenworth/; Cassandra Stephenson, *A TN inmate was fatally beaten for coffee at a private prison. His widow seeks justice*, JACKSON SUN (May 29, 2019), https://www.jacksonsun.com/story/news/2019/05/29/corecivic-tennessee-lawsuit-alleges-inmate-died-due-understaffing-lack-medical-care-earl-johnson/1272710001/; Daniel Arkin, *Tennessee Audit Finds Rampant Understaffing, Other Issues at Prisons*, NBC NEWS (Nov. 14, 2017), https://www.nbcnews.com/news/all/tennessee-audit-finds-rampant-understaffing-other-issues-prisons-n820746.

Tardy's own loss of filial consortium.

## II. PARTIES

8. Plaintiff Eddie Tardy is the father of decedent Laeddie Coleman—a 34-year-old man who died while incarcerated at Defendant CoreCivic's Hardeman County Correctional Facility on September 7, 2021. Mr. Tardy is also the Administrator of Mr. Coleman's estate. Mr. Tardy is a citizen and resident of Marshall County, Tennessee.

9. Defendant CoreCivic of Tennessee, LLC, is a private prison corporation. CoreCivic owns and operates Hardeman County Correctional Facility, the private prison that ignored Mr. Coleman's medical emergency resulting in his death. CoreCivic is a citizen of Tennessee with its principal place of business and corporate headquarters located in Williamson County, Tennessee. CoreCivic may be served through its registered agent at CoreCivic of Tennessee, LLC, Registered Agent: C T CORPORATION SYSTEM, 300 MONTVUE RD, KNOXVILLE, TN 37919-5546.

10. Defendant Vincent Vantell is a citizen of Tennessee who is employed as the warden at Hardeman County Correctional Facility.

11. Defendant Carlisla Byars is a citizen of Tennessee who is employed as a correctional officer at Hardeman County Correctional Facility.

12. Defendant Chance Leeds is a citizen of Tennessee who is currently employed as the warden at Whiteville Correctional Facility, a CoreCivic prison. At the time of Mr. Coleman's murder, Defendant Leeds was employed as the assistant warden of Hardeman County Correctional Facility. At all times relevant to this complaint, Defendant Leeds was employed by Defendant CoreCivic.

13. Defendant Keith Huggins is a citizen of Tennessee who is employed as an internal affairs officer at Hardeman County Correctional Facility.

14. Defendant Hardeman County is a county government in Tennessee. At all times relevant to this Complaint, Hardeman County contracted with Defendant CoreCivic to operate Hardeman County Correctional Facility pursuant to the County Correctional Incentives Act of 1981. Hardeman County may be served with process through its counsel and upon Jimmy Sain, Hardeman County Mayor, 100 Main Street, Bolivar, TN 38008.

### III. JURISDICTION AND VENUE

15. This Court has jurisdiction over the Plaintiffs' federal claims in this civil action pursuant to 28 U.S.C. § 1331.

16. This Court has supplemental jurisdiction to adjudicate the Plaintiffs' state law claims related to the Plaintiffs' federal claims in this action pursuant to 28 U.S.C. § 1367(a).

17. As the judicial district in which one or more Defendants resides, and all Defendants being residents of the State of Tennessee, venue is proper in this Court pursuant to 28 U.S.C. § 1367(b)(1).

18. As the judicial district in which Defendant CoreCivic makes its calculated decisions to underinvest in staffing in its Tennessee facilities, venue is independently proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as the district in which a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred.

19. The Plaintiff has authority to maintain this wrongful death action as the Administrator and personal representative of the of the deceased's estate pursuant to Tenn. Code Ann. § 20-5-107(a).

### IV. FACTUAL ALLEGATIONS

20. At all times relevant to this Complaint, Laeddie Coleman was an inmate housed at Hardeman County Correctional Facility, a private, for-profit prison that is

owned, managed, and operated by Defendant CoreCivic.

21. On September 7, 2021, Mr. Coleman sat out in the open in a pod with another inmate, Devin Jamison, playing cards at a table.

22. No guards were in the booth monitoring the pod at this time, contrary to CoreCivic's contractual staffing obligations.

23. One on-duty guard had been assigned to the pod in which Mr. Coleman was murdered, but Defendant Byars pulled that officer from his post, leaving the pod entirely unsupervised during all times relevant to this complaint.

24. Defendant Byars has a history of leaving the posts that he was tasked with supervising completely unstaffed, contrary to CoreCivic's contractual staffing obligations.

25. Defendants Leeds and Huggins were both aware of Defendant Byars's prior deliberate failures to staff the posts he supervised. They were also aware of Defendant Byars's general and repeated insubordination and unwarranted use of force with inmates.

26. Notwithstanding that awareness, Defendant Byars was still entrusted with the decision-making power over how to staff certain posts, including the post supervising Mr. Coleman's pod the day he was murdered.

27. Defendant Vantell was also aware of the violence—both fatal and non-fatal—that routinely occurs at Hardeman County Correctional Facility due to decisions to understaff the facility, both before his tenure as warden and since he took the title.[2]

---

[2] *See, e.g.*, Alex Friedman, *Tennessee DOC Accused of Covering Up Violent Incidents*, PRISON LEGAL NEWS (Mar. 2013), https://www.prisonlegalnews.org/news/2013/mar/15/tennessee-doc-accused-of-covering-up-violent-incidents/ ("the prison was again put on lockdown status on January 28, 2013 due to 'ongoing conflicts with gang activity and violence'"); Eyewitness News Staff, *UPDATE: 4 injured in fights at Hardeman Co. prison, TDOC says*, WBBJ 7 EYEWITNESS NEWS (Sept. 4, 2018), https://www.wbbjtv.com/2018/09/04/update-4-injured-in-fights-at-hardeman-co-prison-tdoc-says/ ("TDOC confirmed Tuesday that four inmates were injured in four separate fights in different locations within [Hardeman County Correctional Facility].").

28. Since 2016, there have been *at least* five homicides—not including Mr. Coleman's murder—at Hardeman County Correctional Facility.[3]

29. Because CoreCivic has continued to turn a blind eye to the problem of understaffing-created violence in CoreCivic facilities generally and at Hardman County Correctional Facility, specifically, the extreme and outsized degree of violence and preventable death continues to this day.

30. Shortly before 1:00 p.m. on September 7, 2021, an inmate approached Mr. Jamison from behind and began stabbing him multiple times.

31. Mr. Jamison was assisted by other inmates before any prison staff appeared, and he was subsequently taken to medical on a gurney. Mr. Jamison was life-flighted via helicopter to a nearby hospital shortly thereafter.

32. One inmate claimed responsibility for the attack on Mr. Jamison. That inmate gave a single weapon—a sharp, homemade knife—to guards and was escorted out of the pod to segregation at 1:01 p.m.

33. Because one inmate claimed responsibility, officials undertook no further investigation to discern whether others were involved, either directly or indirectly, in the attack.

34. Despite a nearly-fatal attack involving at least one deadly weapon having just occurred, the pod was not locked down, and it was neither searched for weapons nor cleared.

35. Though the attack was gang-related, the Defendants made no effort to

---

[3] Samantha Max, *'They're Supposed To Be Protected': A Homicide At A Private Tennessee Prison Raises Questions About Safety*, WPLN News (Apr. 15, 2021), https://wpln.org/post/theyre-supposed-to-be-protected-a-homicide-at-a-private-tennessee-prison-raises-questions-about-safety/ (compiling data of homicides in CoreCivic facilities from 2016 through 2020, including the Hardeman County Correctional Facility deaths of Daniel Colby, William Hancock, John Herrin, Earl Johnson, and Albert Dorsey).

ensure that inmates believed to be associated with other gangs were not attacked in retaliation. Indeed, no security measures—such as locking down the unit or simply adequately staffing and supervising the unit as the Defendants were obligated to do in the first place—were undertaken in the immediate aftermath of the attack on Mr. Jamison at all.

36. The risk of violence substantially increases in the immediate aftermath of a gang-related attack, and gang activity in general increases the risk of violence. All Defendants had actual knowledge of these facts at the time of Mr. Coleman's murder, and all Defendants had actual knowledge of the problem of gang-related violence at Hardeman County Correctional Facility.

37. All Defendants were aware of the existence and prevalence of gang membership at Hardeman County Correctional Facility,[4] and all inmates believed to be associated with gangs are given an STG ("Security Threat Group") designation that identifies their membership.

38. Still, Defendant Byars left the pod unattended by any prison guards or officials after the gang-related attempted homicide and stabbing of Mr. Jamison.

39. Mere minutes later, Mr. Coleman was attacked in similar fashion by at least three other inmates in retaliation for the attack on Mr. Jamison.

40. A call for assistance came at 1:15 p.m. By the time prison staff responded, Mr. Coleman was unconscious and bleeding profusely, laying on a blanket by the front door.

---

[4] *See, e.g.*, Eyewitness News Staff, *Inmates injured in stabbing at Hardeman County prison*, WBBJ EYEWITNESS NEWS (Sept. 3, 2018), https://www.wbbjtv.com/2018/09/03/inmates-injured-in-stabbing-at-hardeman-county-prison/ ("at least three people were injured in a gang-related incident Sunday night at Hardeman County Correctional Facility.").

41. Prison staff thereafter moved Mr. Coleman to the sally-port and secured the door.

42. Because no gurney was yet available and Mr. Coleman was in dire condition, he was carried from the sally-port and transported the rest of the way to medical on a gurney that met them halfway there.

43. Once at medical, CPR was initiated minutes before EMS personnel arrived. When EMS personnel did arrive at 1:30 p.m., however, the order was given to cease CPR as Mr. Coleman showed no signs of life.

44. At 1:31 p.m., Mr. Coleman was pronounced dead.

45. An autopsy was conducted the next day on September 8, 2021.

46. The autopsy revealed fourteen separate wounds—ten stab wounds and four incised wounds. The autopsy additionally revealed several blunt force injuries.

47. The wounds spanned most of Mr. Coleman's body. His injuries include one stab wound to his neck, two stab wounds to his right hip, one stab wound to his right forearm, three stab wounds to his right thigh, one stab wound to his left upper arm, one stab wound to the left side of his back, one stab wound to the right side of his back, one incised wound to the left side of his chest, one incised wound to the left side of his back, one incised wound to his left shoulder, and one incised wound to his left ring finger.

48. Mr. Coleman also had four abrasions—one each to his chest, back, forearm, and knee—caused by blunt force.

49. The medical examiner determined that Mr. Coleman's fatal wounds were caused by the sharp force injuries to his torso, specifically blows to the right subclavian artery and the esophagus.

50. Mr. Coleman's death was ruled a homicide.

51. At no time during either stabbing were guards present in the booth from which guards are supposed to monitor the prison's pods.

52. There was no guard present in the booth, because Defendant Byars made the decision to remove the only guard that was supervising the pod from his post.

53. Within twenty minutes of the call for a response to the first stabbing, the pod had again been left unsupervised, it was not locked down, and it presented a specific and known risk of immediate retaliatory violence.

54. After the first stabbing, Defendant Byars deliberately failed to assign someone to that post, despite an obvious and immediate threat of violence.

55. Had a guard been present in the booth, Mr. Coleman's stabbing could have been prevented, and he would have been able to receive immediate life-saving medical attention instead of bleeding out and dying in a hallway.

## V. CAUSES OF ACTION

<u>Claim #1: 42 U.S.C. § 1983—Failure to Protect Mr. Coleman from Inmate-on-Inmate Violence (Defendants Vantell, Leeds, Byars, and Huggins)</u>

56. The Plaintiffs reincorporate and reallege the foregoing allegations as if fully set forth herein.

57. At all times relevant to this Complaint, the Defendants had legal duties under the Eighth Amendment to protect Mr. Coleman from violence at the hands of other prisoners and to ensure his reasonable safety while exercising the traditional state function of imprisoning inmates.

58. Because Defendant CoreCivic performs a traditional state function while operating a state prison, at all times relevant to this Complaint, Defendant CoreCivic and all other Defendants in this action acted under the color of state law.

- 9 -

59. An inmate's Eighth Amendment claim based upon deliberate indifference to inmate safety is "akin to recklessness," and it carries both objective and subjective components.

60. Unlike the State of Tennessee, Defendant CoreCivic is not entitled to Eleventh Amendment immunity and may be held liable under § 1983 if its official policies or customs resulted in the Plaintiffs' injuries.

61. The individual Defendants failed to protect Mr. Coleman from violence at the hands of other prisoners.

62. The individual Defendants failed to ensure Mr. Coleman's reasonable safety on the day of his murder.

63. The individual Defendants knew that Mr. Coleman faced a substantial risk of serious harm after Mr. Jamison's stabbing, but they disregarded those risks and failed to take reasonable measures to abate them.

64. At the time Mr. Coleman was murdered, the pervasive risk of harm to inmates at his facility manifested in actual harm and constant inmate-on-inmate attacks, only a fraction of which are officially documented.

65. At the time Mr. Coleman was murdered, each individual Defendant had been exposed to information concerning the risk of physical harm to inmates housed at Hardeman County Correctional Facility arising from gang-related violence, and they must have known about it.

66. Defendant CoreCivic has an unconstitutional policy or practice of maintaining chronically inadequate staffing levels, which leaves inmates such as Mr. Coleman exposed to serious risks of violence that are known to prison officials at CoreCivic's facilities, including Hardeman County Correctional Facility.

67. Defendants Vantell, Leeds, Byars, and Huggins were each personally involved in the implementation of this unconstitutional understaffing policy and participated in its implementation, either as supervisors or as individual participants.

68. The Defendants' unconstitutional understaffing policy proximately resulted in Mr. Coleman's death, and adequate staffing in Mr. Coleman's pod would have prevented his death.

69. Each individual Defendant was specifically aware of and on notice of the heightened number of assaults at Hardeman County Correctional Facility resulting from understaffing.

70. Each individual Defendant was specifically aware of and on notice of Hardeman County Correctional Facility's documented problem of failing to protect inmates from assault by other inmates—information known both internally and reported publicly over the course of multiple widely reported public audits.

71. Defendant Byars made the deliberate decision to remove the single officer that was supervising Mr. Coleman's pod prior to both stabbings, leaving the pod completely unstaffed and unprotected.

72. Defendant Leeds—as the assistant warden of Hardeman County Correctional Facility at the time of Mr. Coleman's death—was aware of and complicit in Defendant CoreCivic's policies and practices of chronically understaffing its facilities.

73. Defendant Leeds was also aware of Defendant Byars's repeated failures to staff his posts, his excessive use of force with inmates, and his insubordination toward senior staff.

74. Despite that awareness, Defendant Leeds failed to ensure that the posts for which Defendant Byars was responsible—including Mr. Coleman's pod on the day of his

- 11 -

Case 3:22-cv-00681   Document 1   Filed 09/02/22   Page 11 of 20 PageID #: 11

murder—were adequately staffed.

76. Defendant Huggins was similarly aware of Defendant Byars's repeated failures to staff his posts, his excessive use of force with inmates, and his insubordination toward senior staff, including Defendant Huggins himself.

76. Despite that awareness, Defendant Huggins failed to ensure that the posts for which Defendant Byars was responsible— including Mr. Coleman's pod on the day of his murder—were adequately staffed.

77. Defendant Vantell—as the warden of Hardeman County Correctional Facility at the time of Mr. Coleman's death—was aware of and complicit in Defendant CoreCivic's policies and practices of chronically understaffing its facilities.

78. Defendant Vantell consciously neglected to remedy Hardeman County Correctional Facility's chronic understaffing policy despite his personal knowledge of the extraordinary and frequently fatal consequences that resulted from it.

79. Defendant Vantell also consciously neglected to remedy Hardeman County Correctional Facility's chronic understaffing policy despite his personal knowledge of the prevalence of gang activity and accompanying violence that plagues the facility.

80. The individual Defendants not only knew and were on notice generally that their chronic understaffing policy materially increased the risk of violence and death; instead, due to Mr. Jamison's stabbing mere minutes beforehand, they also knew and were on notice that their specific understaffing of Mr. Coleman's pod on September 7, 2021 could and likely would lead to retaliatory violence in that pod, and that Mr. Coleman, specifically, was especially vulnerable to assault due to his presence in the pod and asserted membership in a rival gang.

81. The individual Defendants deliberately failed to protect Mr. Coleman by

choosing not to take any protective measures to prevent a retaliatory gang response to Mr. Jamison's attack.

82. The individual Defendants deliberately failed to check if any other inmates in Mr. Coleman's pod had weapons after Mr. Jamison's attack.

83. Defendant Byars deliberately failed to return to his post the one officer who had been supervising the unit prior to Mr. Jamison's stabbing.

84. Instead, the Defendants removed one inmate from the pod and left it once again completely unsupervised.

85. Defendant Byars's failure to assign even one guard to supervise Mr. Coleman's unit following Mr. Jamison's stabbing allowed what had already been proven to be a violent and near-fatal environment to continue without undertaking any meaningful safety measures to prevent further violence.

86. As such, Mr. Coleman was brutally stabbed to death by at least three other inmates and left alone to bleed out on the floor with fourteen stab wounds, incised wounds, and blunt force injuries.

CLAIM #2: LIABILITY UNDER *MONELL V. DEPT. OF SOCIAL SERVICES*, 436 U.S. 658 (1978)
(AS TO DEFENDANT CORECIVIC)

87. The Plaintiffs incorporate and reallege the foregoing allegations as if fully set forth herein.

88. Defendant CoreCivic has adopted a policy, practice, and custom of severely understaffing its facilities, including Hardeman County Correctional Facility, without regard to inmate safety because understaffing is more profitable.

89. Although not formally approved, this unconstitutional policy, practice, and custom of severely understaffing its facilities, including Hardeman County Correctional

Facility, is so widespread as to have the force of law.

90. Each of the individual Defendants had knowledge of and acquiesced in this established practice.

91. CoreCivic's custom of severe, chronic understaffing at Hardeman County Correctional Facility is so permanent and well settled as to constitute a custom or usage with the force of law and is deeply embedded in Hardeman County Correctional Facility's daily functioning.

92. Defendant CoreCivic's custom of severe, chronic unconstitutional understaffing at Hardeman County Correctional Facility was ratified by Defendant Vantell in his capacity as warden.

93. CoreCivic's custom of tolerance or acquiescence of federal rights violations is so thoroughly documented and widespread that federal rights violations and CoreCivic are practically synonymous.

94. As a result of multiple audits identifying CoreCivic's severe understaffing issues and thousands of violent incidents—both reported and unreported—at the facility over a period of years, CoreCivic had actual knowledge of Hardeman County Correctional Facility's chronic understaffing problems, but it opted not to staff Hardeman County Correctional Facility adequately because doing so would have been less profitable.

95. At the time of Mr. Coleman's murder, CoreCivic's employees—including Defendant Vantell, CoreCivic's on-site policymaker—had actual knowledge that Hardeman County Correctional Facility's chronic understaffing problems resulted in an extraordinary and outsized level of inmate-on-inmate violence at the facility.

96. CoreCivic's policy and practice of unconstitutional understaffing is widespread, rampant, and endemic to CoreCivic's prison facilities, including Hardeman

County Correctional Facility.

97. The Defendants knew of the heightened and chronic safety risks to inmates resulting from understaffing at Hardeman County Correctional Facility, but they tolerated, maintained, and promoted understaffing to generate greater profits for CoreCivic at the expense of the safety of inmates like Mr. Coleman.

98. Mr. Coleman's death is attributable to Defendant CoreCivic's policy, practice, and custom of failing to ensure an adequate, constitutional, or contractually-compliant level of staffing at Hardeman County Correctional Facility. This policy, practice, and custom was explicitly or impliedly authorized by Defendant CoreCivic, and Defendant Vantell ratified and knowingly acquiesced in it.

99. If Mr. Coleman's pod had been properly staffed on the day of his murder, he would not be dead.

100. Instead, because Hardeman County Correctional Facility was chronically understaffed, including at the time of Mr. Coleman's murder, Mr. Coleman was the victim of a preventable murder, and CoreCivic's custom of severe, chronic unconstitutional understaffing was the moving force behind his death.

101. Hardeman County Correctional Facility's chronic understaffing continued and continues to remain unremedied even after Mr. Coleman's death.

CLAIM #3: NEGLIGENCE
(DEFENDANTS CORECIVIC, VANTELL, LEEDS, BYARS, AND HUGGINS)

102. The Plaintiffs incorporate and reallege the foregoing allegations as if fully set forth herein.

103. Defendants CoreCivic, Vantell, Leeds, Byars, and Huggins owed a legal duty of care to Mr. Coleman to protect him from reasonably foreseeable harm.

104. Because these Defendants understood Mr. Coleman to be a member of or associated with a rival gang and labeled him as such, the Defendants knew of or had reasons to anticipate the retaliatory attack on Mr. Coleman after Mr. Jamison's stabbing, but they did not use reasonable care to prevent it.

105. Defendants had actual and constructive notice of the specific risk of foreseeable harm that Mr. Coleman's killers posed to Mr. Coleman, and they had reason to anticipate the attack on him after Mr. Jamison's near-fatal stabbing minutes beforehand.

106. Accordingly, the Defendants knew or should have known that Mr. Coleman would become the victim of a retaliatory attack, but they failed to use reasonable care to prevent it.

107. Defendants' breaches of their duty of care to Mr. Coleman proximately caused Mr. Coleman to die at the hands of violent and dangerous felons who should never have been housed at Hardeman County Correctional Facility at all given their status as dangerous felons.

<u>CLAIM #4: NEGLIGENCE/NEGLIGENT SUPERVISION
(DEFENDANT HARDEMAN COUNTY)</u>

108. The Plaintiffs incorporate and reallege the foregoing allegations as if fully set forth herein.

109. Hardeman County Correctional Facility is "not being operated pursuant to the Private Prison Contracting Act of 1986[,]" which only permits Defendant CoreCivic to operate directly a single private prison in Tennessee. *See Friedmann v. Corr. Corp. of Am.*, 310 S.W.3d 366, 378 (Tenn. Ct. App. 2009).

110. Instead, Hardeman County Correctional Facility is "being operated

pursuant to [a] contract[] with [a] local governmental entit[y] rather than the State of Tennessee, . . . pursuant to the County Correctional Incentives Act of 1981, Tenn. Code Ann. § 41–8–101, et seq." *Id.* at 379.

111. This Act permits Defendant Hardeman County to contract with Defendant CoreCivic to "house additional **nondangerous** felony offenders locally." *See* Tenn. Code Ann. § 41-8-102 (emphasis added).

112. This restriction notwithstanding, CoreCivic houses dangerous felony offenders at Hardeman County Correctional Facility.

113. Mr. Coleman was murdered at the hands of dangerous felony offenders.

114. Defendant Hardeman County knew that CoreCivic illicitly housed dangerous felony offenders at Hardeman County Correctional Facility at the time of Mr. Coleman's death.

115. Even so, Hardeman County unreasonably failed to exercise due care to ensure CoreCivic's compliance with requirements that only nondangerous felony offenders be housed there.

116. Defendant Hardeman County also had actual knowledge of the extraordinary and outsized degree of inmate-on-inmate violence at Hardeman County Correctional Facility and its pervasive non-compliance with contract obligations, including staffing obligations, at the time of Mr. Coleman's murder.

117. Even so, Hardeman County unreasonably failed to exercise due care to ensure staffing compliance and failed to ensure a reasonable degree of safety at the facility.

118. Defendant Hardeman County had a duty to all inmates at Hardeman County Correctional Facility, including Mr. Coleman, to ensure adequate staffing and

safety of Hardeman County Correctional Facility.

119. By failing to ensure adequate staffing and safety of Hardeman County Correctional Facility despite its actual knowledge of CoreCivic's chronic understaffing and other pervasive noncompliance with contract requirements while housing dangerous felony offenders there, Defendant Hardeman County breached this duty of care.

120. Defendant Hardeman County knew, at the time of Mr. Coleman's death, that CoreCivic was unfit to handle the job of maintaining an adequate level of staffing and safety at Hardeman County Correctional Facility and that it routinely failed to comply with its contractual obligations.

121. But for Defendant Hardeman County's failure to ensure that CoreCivic was complying with the County Correctional Incentives Act of 1981 and its failure to ensure that CoreCivic was meeting its contract obligations regarding staffing and other requirements affecting inmate safety at Hardeman County Correctional Facility, Mr. Coleman would not have died.

122. Defendant Hardeman County's failure to ensure that CoreCivic was complying with the County Correctional Incentives Act of 1981 and its failure to ensure that CoreCivic was meeting its contract obligations regarding staffing and other requirements affecting inmate safety at Hardeman County Correctional Facility proximately caused Mr. Coleman's death, resulting in Plaintiffs' actual damages.

### CLAIM #5: LOSS OF CONSORTIUM
### (ALL DEFENDANTS)

123. The Plaintiffs reincorporate and reallege the foregoing allegations as if fully set forth herein.

124. Tennessee allows for an award of loss of filial consortium and other

damages for the death of one's child under Tenn. Code Ann. § 20-5-113. *See Hancock v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 54 S.W.3d 234, 236 (Tenn. 2001).

125. The Defendants' wrongful acts, faults, omissions, and tortious misconduct caused Mr. Tardy to suffer filial consortium and other damages arising from the wrongful death of his son.

126. Accordingly, Mr. Tardy is entitled to an award of damages including the pecuniary value of Mr. Coleman's life and the loss of his son's attention, guidance, care, protection, companionship, cooperation, affection, and love.

## VI. PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for the following relief:

1. That proper service issue and be served upon the Defendants, and that the Defendants be required to appear and answer this Complaint within the time required by law;
2. That the Plaintiffs be awarded all compensatory, consequential, and incidental damages to which Plaintiffs are entitled in an amount not less than $2.5 million;
3. That the Plaintiffs be awarded punitive damages in an amount not less than $7.5 million;
4. That the Plaintiffs be awarded their reasonable attorney's fees pursuant to 42 U.S.C. § 1988(b);
5. That a jury of 12 be empaneled to try this cause;
6. That pre-judgment and post-judgment interest be awarded to the Plaintiffs;
7. That the Plaintiffs be awarded all further relief to which they are entitled.

Respectfully submitted,

/s/ Daniel A. Horwitz
DANIEL A. HORWITZ, BPR #032176
LINDSAY SMITH, BPR #035937
HORWITZ LAW, PLLC
4016 WESTLAWN DR.
NASHVILLE, TN 37209
daniel@horwitz.law
lindsay@horwitz.law
(615) 739-2888

*Counsel for Plaintiffs*