IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| EDDIE TARDY, individually and as Administrator of the Estate of LAEDDIE COLEMAN, | ) ) ) ) | |
| Plaintiff, | ) | No. 3:22-cv-00681 |
| | ) | |
| v. | ) | |
| | ) | |
| CORECIVIC OF TENNESSEE, LLC, ET AL., | ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' JOINT RESPONSE TO DANIEL HORWITZ'S MOTION TO CLARIFY THAT LOCAL RULE 83.04 DOES NOT PROHIBIT COUNSEL FROM MAKING EXTRAJUDICIAL STATEMENTS ABOUT THIS ACTION (ECF NO. 90)**

CoreCivic of Tennessee, LLC, Vincent Vantell, Chance Leeds, Carlisa Byars, Keith Huggins, and Hardeman County, Tennessee,[1] by and through undersigned counsel, jointly respond in opposition to Daniel Horwitz's Motion to Clarify. (ECF No. 90).

**BACKGROUND**

Plaintiff, Eddie Tardy, individually, and as Administrator of the Estate of LaEddie Coleman, filed this lawsuit on September 2, 2022, alleging Eighth Amendment claims under § 1983 against the CoreCivic Defendants related to the death of LaEddie Coleman at Hardeman County Correctional Facility ("HCCF"). (ECF No. 1). Plaintiff filed his amended complaint on April 4, 2023. (ECF No. 68). Plaintiff did not seek any declaratory relief in his amended complaint and did not mention any challenge to Local Rule 83.04. (*Id.*).

---

[1] Hardeman County, Tennessee responds to the Motion to Clarify without waiving any defenses raised in its Motion to Dismiss Amended Complaint, (ECF No. 79)

Now, on May 16, 2023, Daniel Horwitz (hereinafter "Plaintiff's counsel") filed on his own behalf (and ostensibly on behalf of his client as well) a "motion for clarification" seeking preemptive authorization from this Court for Plaintiff's counsel to make extrajudicial statements about this case (and Defendants more generally). (ECF No. 90). Plaintiff's counsel also seeks a declaratory judgment invalidating Local Rule 83.04 as unconstitutional. (*Id.*). In support, Plaintiff's counsel largely attacks an order from this Court in a separate matter—*Newby v. CoreCivic of Tenn., LLC*, Case No. 3:22-cv-00093 (M.D. Tenn.)—where Plaintiff's counsel was prohibited from posting on his Twitter account and making other extrajudicial statements that this Court found had a "substantial likelihood of materially prejudicing an adjudicative proceeding in [*Newby*], especially interfering with a fair trial." (ECF No. 91, PageID 2595; Exhibit A, ("Newby Order") p. 7). Plaintiff's counsel asserts that his speech is now chilled by the *Newby* Order due to fear of reprisal from this Court in the future for his allegedly protected speech. (*Id.* at PageID 2596).

I.      THE *NEWBY* CASE.

In *Newby*, the named defendants, including CoreCivic, moved for Plaintiff's counsel's compliance with Local Rule 83.04. (Newby, No. 3:22-cv-00093, ECF No. 45; ECF No. 46, attached as Exhibit B). The *Newby* defendants contended that Plaintiff's counsel's "continued public statements" would undoubtedly deprive the *Newby* defendants of a fair trial. (Exhibit B, p. 2). As explained by the *Newby* defendants, Plaintiff's counsel publicly discussed his opinions regarding the *Newby* lawsuit and the alleged underlying facts on multiple occasions. (*Id.*). Some examples of Plaintiff's counsel's inflammatory statements included calling CoreCivic a "death factory" and contending that CoreCivic "kill[s]" people. (*Id.* at p. 3). Additionally, Plaintiff's counsel filed in the public record documents he obtained through a subpoena *ducus tecum* through

improper notices of filing. (*Id*.). Once filed, he posted the documents onto his Twitter account and made inflammatory comments about the posted documents. (*Id*. at p. 4). Later, the same documents made their way into the hands of local media outlets, such as the *Tennessean*. (*Id*.). Based on the above (and numerous other extrajudicial statements), the *Newby* defendants requested the Court:

(1) Order that counsel for Newby cannot disseminate any public communication that would interfere with a fair trial to include communications regarding this lawsuit or matters at issue in this lawsuit;

(2) Instruct counsel for Newby that they must remove all public communications within their control, including social media posts, that would interfere with a fair trial, including commentary regarding this lawsuit or matters at issue in this lawsuit;

(3) Order that counsel for Newby comply with Local Rule 83.04; and

(4) Strike all Notices of Filing that Newby has submitted in this matter that were filed without any proper purpose, which would include Docket Entries 33, 37, and 38.

(*Id*. at p. 19).

On July 15, 2022, the Court granted the *Newby* defendants' motion in part and found that Plaintiff's counsel's repeated extrajudicial statements about pending litigation "fit squarely within the prohibition on extrajudicial statements set forth in LR 83.04." (*Newby* Order, pp. 4, 9). In so holding, the Court first noted that Plaintiff's counsel's tweets included assertions about documents produced in discovery relevant to the litigation. (*Id*. at p. 4). And ultimately, the Court found that "Mr. Horwitz's tweets about CoreCivic provide to the public a significant number of discovery documents, along with opinionated statements from Mr. Horwitz about the significance of each document and about CoreCivic more generally." (*Id*.).

The Court also found that Plaintiff's counsel knew or should have known his tweets would be disseminated to the public, considering his "self-acknowledged reputation for 'public advocacy'" and "successful media strategies during litigation against misbehaving governmental litigants.'" (*Id*). In fact, the record showed that Plaintiff's counsel encouraged public

dissemination, imploring that "[i]f you're a journalist who is interested in shit like this, I can assure you there are an almost uncountable number of mind-blowing documents out there just waiting to be unearthed or pried loose with pretty minimal effort." (*Id.*).

Much of the information disseminated also classified as prohibited speech under Local Rule 83.04 as "information that the lawyer knows or reasonably should know is likely to be inadmissible as evidence at trial or that would, if disclosed, create a substantial risk of prejudicing an impartial trial." (*Id.* at p. 5 (quoting LR 83.04 (a)(2)(A), (D)). As the Court rightfully noted, "[t]rials are meant to occur in the courtroom, not in the media. While litigation is still pending attorneys should not actively seek out media attention that could disrupt judicial proceedings or interfere with an opposing party's right to a fair trial." (*Id.*). Yet, that is exactly what Plaintiff's counsel sought to do. Therefore, the Court found that Plaintiff's counsel's comments had a "substantial likelihood of materially prejudicing an adjudicative proceeding in this matter, especially interfering with a fair trial" and violated Local Rule 83.04. (*Id.* at p. 6). As a result, the Court ordered the following:

1.    Plaintiffs' counsel may not disseminate any public communication that would interfere with a fair trial, including commentary regarding this lawsuit or matters at issue in the lawsuit;

2.    Plaintiffs' counsel must remove all public communications within their control, including social media posts, that would interfere with a fair trial, including commentary regarding this lawsuit or matters at issue in this lawsuit;

3.    Plaintiffs' counsel may not make extrajudicial statements of any kind about documents filed in Docket Entries 33, 37, and 38. Plaintiff's counsel is strongly advised against submitting similar Notices of Filing with the Court or otherwise manipulating the scope of the public record in this case.

(*Id.* at p. 9). Plaintiff filed a motion for review of the Newby Order on July 29, 2022. (Newby, No. 3:22-cv-00093, ECF No. 60).

On August 17, 2022, the parties in *Newby* filed a joint stipulation of dismissal. (*Newby*, No. 3:22-cv-00093, ECF No. 70). After agreeing to dismiss the case with prejudice, Plaintiff's counsel filed a motion on his own behalf seeking to stay enforcement of the *Newby* Order, to adjudicate the pending objections to the Order, or to reverse and vacate the *Newby* Order. (ECF No. 71). The *Newby* defendants responded in opposition, noting that (1) Plaintiff's counsel's motion was moot and was seeking an advisory opinion; (2) Plaintiff's counsel lacked standing to request adjudication of Plaintiff's motion for review; and (3) the *Newby* Order was constitutional and should not be disturbed. (Newby, No. 3:22-cv-00093, ECF No. 76). On December 2, 2022, this Court dismissed the Newby case with prejudice and denied all pending motions as moot. (*Newby*, No. 3:22-cv-00093, ECF No. 79).

II.     PLAINTIFF'S COUNSEL'S PUBLIC STATEMENTS SINCE *NEWBY*.

Since the *Newby* Order, Plaintiff's counsel has continued to tweet about CoreCivic to his over 9,000 followers. On December 29, 2022, the same month the *Newby* case was dismissed, Plaintiff's counsel tweeted about CoreCivic and undersigned counsel:



And throughout April of this year, Plaintiff's counsel repeatedly tweeted about CoreCivic. (*Id.*). For instance, on April 25, 2023, he tweeted about the very understaffing claims he has asserted in this case:



Other tweets about CoreCivic included Plaintiff's counsel's allegations that "CoreCivic's reports to the TDOC are often materially inaccurate," and comments concerning other Tennessee CoreCivic facilities:



**Daniel A. Horwitz** @danielahorwitz · Apr 11
From CoreCivic's 10-K, this is the other one: lr.corecivic.com/static-files/2
.... Can't imagine which non-federal government partners it might be
marketing an unused prison facility in West Tennessee to...

@TheTNHoller



💬    ⟲ 2    ♡ 9    📊 846    ⬆️

Show this thread

---

**Daniel A. Horwitz** @danielahorwitz · Apr 16
Nearly all whistleblowing about prison conditions comes from
contraband cell phones. I often learn about inmate deaths and stabbings
at CoreCivic facilities before they've even alerted the TDOC, and
CoreCivic's reports to the TDOC are often materially inaccurate.



💬 2    ⟲ 11    ♡ 38    📊 3,262    ⬆️

And notably, he also tweeted about the *Newby* Order on April 6, 2023:



The aforementioned constitute just some of the examples of Plaintiff's counsel tweeting about CoreCivic over the past months. Nonetheless, despite his willingness to continue tweeting about CoreCivic, Plaintiff's counsel filed the present motion. He fails to articulate specifically what he wishes to tweet that he has not tweeted because of the *Newby* order. But Plaintiff's counsel filing of this motion gives Defendants significant concerns that Plaintiff's counsel, as he did in *Newby,* desires to utilize his social media presence to inappropriately influence the jury pool.

For the reasons stated below, Plaintiff's counsel's motion is procedurally improper and should be denied on the merits.

**ARGUMENT**

I.    PLAINTIFF'S COUNSEL'S "MOTION FOR CLARIFICATION" IS PROCEDURALLY IMPROPER.

**A. Plaintiff's "motion for clarification" is really a motion to reconsider that is improperly filed in this case.**

There is no Federal Rule of Civil Procedure governing "motions for clarification." *See* Fed. R. Civ. P. *See also In re Oakland Physicians Med. Ctr., LLC v. Simon*, 2020 U.S. Dist. LEXIS 49138, at *4 (E.D. Mich. Mar. 20, 2020). Generally, courts have interpreted such motions as motions to reconsider or motions for relief from judgment. *Pilton v. Washington*, 2022 U.S. App. LEXIS 29644, at *2 (6th Cir. Oct. 24, 2022); *Vaughn v. Laurel Cty. Jail*, 1996 U.S. App. LEXIS 14497, at *3 (6th Cir. May 14, 1996); *In re Oakland Physicians Med. Ctr., LLC*, 2020 U.S. Dist. LEXIS 49138, at *4; *Brasfield v. Source Broadband Servs*., LLC, 2010 U.S. Dist. LEXIS 154584, at *4 (W.D. Tenn. Nov. 8, 2010). Here, Plaintiff's counsel essentially seeks this Court reconsider an order entered in the *Newby* case. Like "motions for clarification, there is no rule governing motions to reconsider." *Westerfield v. United States*, 366 Fed. App'x 614, 619 (6th Cir. 2010). Nonetheless, courts typically analyze such motions under Rule 60 of the Federal Rules of Civil Procedure. *Id*.

As an initial issue, there is no order for this Court to reconsider. There has been no ruling *in this case* concerning Plaintiff's counsel's repeated extrajudicial statements. And Plaintiff cannot seek *this* Court to reconsider an order entered in the *Newby* case, which has been dismissed with prejudice. (*Newby*, No. 3:22-cv-00093, ECF Nos. 70, 79). The Rules of Civil Procedure do not contemplate an attorney seeking relief from an order entered in an entirely separate matter involving a different client. And not only is the client different. In this case, there are different defendants, including counsel unfamiliar and uninvolved with the *Newby* case. Such requested relief plainly stretches the Rules of Civil Procedure beyond their limits.

Setting this aside, the motion is also untimely. The Rule requires that a motion must be made within a "reasonable time." Fed. R. Civ. P. 60(c). In this instance, the timing is clearly unreasonable. The parties in the *Newby* case filed a stipulation of dismissal on August 17, 2022, and the Court dismissed the case with prejudice on December 2022. (*Newby*, No. 3:22-cv-00093, ECF Nos. 70, 79). Plaintiff's counsel cannot now collaterally attack a final order in a different case months after the fact. Therefore, Plaintiff's counsel's motion should be denied.

### B. Plaintiff's counsel lacks standing because his "motion for clarification" is barred by the prudential standing rule and seeks an improper advisory opinion.

Plaintiff's counsel has no standing to assert his own purported free speech rights in his client's case. "[F]ederal courts adhere to a prudential standing rule that 'bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves.'" *Hartman v. Acton*, 613 F. Supp. 3d 1015, 1022 (S.D. Ohio Apr. 21, 2020) (quoting *Warth v. Seldin*, 422 U.S. 490, 491, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)). Generally, a plaintiff must assert their own legal rights and "cannot rest a claim to relief on the rights or interests of third parties." *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 363 (6th Cir. 2012). *See also In re Adoption of M.J.S.*, 44 S.W.3d 41, 60 n.6 (Tenn. Ct. App. 2000) ("[A]s a general rule, a litigant does not have standing to assert another person's legal rights."). Relatedly, Plaintiff's counsel cannot "piggyback" onto his own client's lawsuit. *See Asher v. Unarco Material Handling, Inc*., 596 F.3d 313, 318 (6th Cir. 2010) (indicating that a party cannot "ride piggyback on the claims" of another party).

Here, Plaintiff's counsel attempts to assert his own alleged First Amendment rights in his client's § 1983 lawsuit. But this is his client's case, not his. Plaintiff cannot use his client's case as a vehicle for what should have been filed as its own, separate lawsuit. If Plaintiff's counsel wants to seek declaratory relief clarifying the scope of Local Rule 83.04 or declaring the rule unconstitutional, he should not be able to do so in a § 1983 lawsuit not related to his requested

declaratory relief. Consequently, Plaintiff's counsel lacks standing under the prudential standing rule to seek declaratory relief for himself in his client's action.

And even if Plaintiff's counsel can file his own requested relief in his client's case, this Court cannot preemptively advise Plaintiff's counsel on whether he will violate this Court's local rules about potential future extrajudicial statements. When a party seeks an advisory opinion, there is no justiciable case or controversy. *Flast v. Cohen*, 392 U.S. 83, 95 (1968). Indeed, a court's judgment "must resolve a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975).

Generally, standing requires "(1) an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) a likelihood that the injury will be addressed by a favorable decision." *Sankyo Corp. v. Nakamura Trading Corp.*, 139 F. App'x 648, 650 n.6 (6th Cir. 2005) (quoting *United Food & Commercial Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544, 551 (1996)). In the First Amendment context, plaintiffs do not "establish standing simply by claiming that they experienced a 'chilling effect' that resulted from a government policy that does not regulate, constrain, or compel any action on their part." *Am. Freedom Law Ctr., Inc. v. Nessel*, 2020 U.S. Dist. LEXIS 60622, at *11 (W.D. Mich. Jan. 15, 2020). Even when a party has been unlawfully sanctioned in the past, "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). While previous sanctions might, of course, be "evidence bearing on whether there is a real and immediate threat of repeated injury. . . where the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief." *Fieger v. Mich. Supreme Court*, 553 F.3d 955, 966 (6th Cir.

2009) (citation omitted). Instead, "[i]n order to have standing, an individual must present more than 'allegations of a subjective 'chill.'' There must be a 'claim of specific present objective harm or a threat of specific future harm.'" *Adult Video Ass'n v. United States Dep't of Justice*, 71 F.3d 563, 566 (6th Cir. 1995).

Here, as an initial matter, Plaintiff's counsel's continued inflammatory remarks about CoreCivic since the *Newby* order reveal his speech *has not been* subjectively chilled. As noted above, he continues to make public remarks about CoreCivic and CoreCivic's lawyers. But more importantly, Plaintiff's counsel's generalized assertion that his speech is "chilled" is insufficient to establish standing. A helpful case to consider is *Fieger v. Mich. Supreme Court*, 553 F.3d 955, 964 (6th Cir. 2009). In *Fieger*, an attorney, Geoffrey Fieger, and his attorney, Richard Steinberg, brought suit challenging the constitutionality of two of Michigan's professional conduct rules. *Id*. at 957. There, prior to bringing suit, the Michigan Attorney Grievance Administrator disciplined Fieger because he publicly criticized appellate judges after they found that he engaged in misconduct during a trial. Among other things, Fieger referred to the judges as "three jackass Court of Appeals judges." *Id*. at 958. He also likened them to "Adolph Hitler" and made other derogatory statements about them on a public radio show. *Id*. After being disciplined, Fieger sued and alleged that the applicable rules as written violated his First Amendment rights. *Id*. In doing so, Fieger presented two arguments in support of his contention that he possessed standing to make facial challenges. First, he asserted that he suffered actual present harm because the courtesy and civility rules and the threat of discipline for violating them "chilled" his speech and conduct. Second, he contended that he suffered a significant possibility of future harm because he had twice been subjected to disciplinary proceedings under those rules. Additionally, Steinberg contended that he possessed standing to contest the constitutionality of the courtesy and civility rules because

"[s]ince the Michigan Supreme Court released its opinion . . . , Steinberg has, for the most part, ceased publishing comment publicly critical of the Court." *Id.* at 962. Ultimately, however, the Sixth Circuit ruled that neither Fieger nor Steinberg possessed standing. The Court explained in pertinent part:

> …[P]laintiffs here make no attempt to articulate, with *any* amount of specificity, their intended speech or conduct…while the challenged rules have been enforced, plaintiffs fail to sufficiently articulate their intended speech or conduct. They make only vague suggestions of a *general* desire to criticize the Michigan judiciary. They have not presented sufficient facts to demonstrate a threat of sanction arising from their unspecified future criticisms.

*Fieger v. Mich. Supreme Court*, 553 F.3d 955, 964 (6th Cir. 2009). Here, like the plaintiffs in *Fieger*, Plaintiff's counsel makes general assertions of a desire to discuss matters of this case in the general public. He likewise indicates a desire to continue criticizing CoreCivic on his Twitter account. But in making such general assertions, he fails to articulate exactly what speech he intends to make, especially considering he has continued to make derogatory statements about CoreCivic and its counsel via social media. Like in *Fieger*, his general assertions are insufficient to establish standing.

Quite simply, there is no case or controversy to litigate. Any challenge to the *Newby* order is moot. (*Newby*, No. 3:22-cv-00093, ECF No. 79). And any anticipatory opinion clarifying the scope of Local Rule 83.04's boundaries or Plaintiff's counsel's right to make extrajudicial statements about this case constitutes an impermissible advisory opinion. There is no specific current harm and any complaints of specific future harm are speculative. Therefore, Mr. Horwitz and Plaintiff lack standing to seek the relief sought by the motion.

### C. Plaintiff counsel's "motion for clarification" should be denied because Plaintiff failed to raise any request for declaratory relief in his complaint.

Rule 8 of the Federal Rules of Civil Procedure requires that "[a] pleading that states a claim

for relief must contain . . . a demand for the relief sought." Fed. R. Civ. P. 8(a). *See Bejil v. Ethicon, Inc.*, 269 F.3d 477, 481 (5th Cir. 2001) (stating that complaint must place defendant on notice of claims for relief). Just like any other claim, requests for declaratory relief are required to follow the Federal Rules of Civil Procedure and must comply with federal pleading standards. *See* Fed. R. Civ P. 57. Se*e Days Inn Worldwide, Inc. v. Sai Baba, Inc.*, 300 F. Supp.2d 583, 592-593 (N.D. Ohio 2004), ("A request for declaratory judgment must accompany the substantive claim for which declaratory judgment is sought.") Here, Plaintiff does not request any declaratory relief in his Amended Complaint. (ECF No. 68). Because Plaintiff requested no declaratory relief, Plaintiff's counsel's "motion for clarification" should be denied.

### D. The parties before the Court are not proper parties to litigate Plaintiff's counsel's declaratory judgment action over Local Rule 83.04.

This is 42 U.S.C. § 1983 lawsuit brought by Eddie Tardy against CoreCivic, Hardeman County, and individual CoreCivic defendants. None are the proper parties to litigate Plaintiff's counsel's requested declaratory relief.

Where there is no dispute between the parties, declaratory relief is improper. *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011); *Gross v. Fox*, 496 F.2d 1153, 1974 U.S. App. LEXIS 9194 (3d Cir. 1974). For example, in *Ohio v. Nobile & Thompson Co., L.P.A.*, 2013 U.S. Dist. LEXIS 26794 (S.D. Ohio Feb. 27, 2013), the State of Ohio "preemptively" brought suit against Nobile & Thompson, a law firm, seeking declaratory relief. *Ohio v. Nobile & Thompson Co., L.P.A.*, 2013 U.S. Dist. LEXIS 26794, at *19 (S.D. Ohio Feb. 27, 2013). However, Nobile & Thompson was the incorrect defendant. *Id.* Instead, the relief sought was against clients of the firm who intended to bring an FDCPA claim. *Id.* Moreover, the firm's clients would not be bringing their lawsuit against the State of Ohio. *Id.* at *20. Instead, the state's special counsel would be the defendant in the potential action. *Id.* Because the State of Ohio and Nobile and Thompson were

not the appropriate parties to litigate any declaratory judgment action, the court refused to exercise jurisdiction over the declaratory judgment action. *Id.* In so holding the court reasoned,

> [T]he FDCPA claim upon which the parties hang their jurisdictional hat does not belong to Nobile & Thompson and, even if it did, would not be brought against the State anyway. The goofy reality is that this Court is asked to exercise federal jurisdiction based upon a threatened FDCPA claim that would involve neither the State of Ohio nor Nobile & Thompson as parties. Practical and wise judicial administration counsels against a federal tribunal exercising jurisdiction over such goofiness.

*Id.*

Similar to *Nobile & Thompson*, none of the named parties are appropriate parties to litigate Plaintiff's counsel's requested declaratory relief. First, although Eddie Tardy is the named Plaintiff in this case, the Motion for Clarification makes clear Mr. Tardy is not the proper party regarding the relief sought in the motion. There is no allegation that Eddie Tardy's First Amendment speech has been chilled, only that Plaintiff's counsel fears reprisal from this Court for his extrajudicial statements about Defendants. Thus, Eddie Tardy is the incorrect plaintiff for the requested declaratory relief. Moreover, the named defendants are improper parties for Plaintiff's counsel's request for declaratory relief. These defendants did not implement Local Rule 83.04, and should not have to defend its constitutionality. *This Court* implemented said rule. And ruling upon Plaintiff's counsel's request for declaratory relief does nothing to solve any controversy in this § 1983 lawsuit. As a result, Plaintiff's counsel's motion should be denied.

II. EVEN IF PLAINTIFF'S COUNSEL'S MOTION IS SOMEHOW PROCEDURALLY APPROPRIATE, IT SHOULD BE DENIED ON THE MERITS.

Plaintiff's counsel complains that this Court improperly restricted his ability to make extrajudicial statements in the *Newby* case. Based on the *Newby* Order, he now claims he fears further orders from this Court restricting frequent prejudicial extrajudicial statements about CoreCivic. However, the *Newby* Order was correct—Plaintiff's counsel's repeated public

statements about the *Newby* case violated Local Rule 83.04, and allowing him to tweet in a similar fashion about this case would do the same. Moreover, Local Rule 83.04 does not violate the First Amendment.

### A. Plaintiff's counsel's extrajudicial statements violated Rule 83.04.

Local Rule 83.04 provides the following:

(a) By Attorneys Concerning Civil Proceedings

> (1) Limitation on Extrajudicial Statements. A lawyer who is participating in or has participated in the investigation or litigation of a matter, either directly or indirectly, must not make an extrajudicial statement (other than a quotation from or reference to public records) that the lawyer knows or reasonably should know will be disseminated by public communication and will have substantial likelihood of materially prejudicing an adjudicative proceeding in the matter, including especially that will interfere with a fair trial.

> (2) Comments More Likely Than Not to Have Material Prejudicial Effect. Comment relating to the following matters is more likely than not to have a material prejudicial effect on a proceeding, and the burden is upon the person commenting upon such matters to show that the comment did not pose such a threat:

>> (A) Evidence regarding the occurrence or transaction involved;

>> (B) The character, credibility, or criminal record of a party, witness, or prospective witness; or

>> (C) The performance or results of any examinations or tests or the refusal or failure of a party to submit to an examination or test.

>> (D) Information that the lawyer knows or reasonably should know is likely to be inadmissible as evidence at trial or that would, if disclosed, create a substantial risk of prejudicing an impartial trial.

L.R. 83.04. As the Court surmised, Plaintiff's counsel's repeated comments and sharing of documents produced during discovery plainly violated both section (1) and (2) of the Rule. (Exhibit A).

First, Plaintiff's counsel knew or reasonably should have known that his inflammatory statements would be "disseminated by public communication and w[ould] have [a] substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." Said comments and documents were primarily posted on Plaintiff's counsel's public Twitter account, which at the time had over 8,000 followers. Moreover, his tweets make clear that not only did he know such statements would be disseminated to the public, he welcomed it. He stated that "[i]f you're a journalist who is interested in shit like this, I can assure you there are an almost uncountable number of mind-blowing documents out there just waiting to be unearthed or pried loose with pretty minimal effort." (Exh. B, p. 4). Furthermore, as the Court noted (and the *Newby* Defendants showed), Plaintiff's counsel's statements had a substantial likelihood of materially interfering with the chance for a fair trial. (Newby Order, p. 4-5; Exh. B). Certainly, stating that CoreCivic deals drugs, that CoreCivic "kill[ed] people, that CoreCivic is a "death camp," that CoreCivic does not "give[] a sh*t" about the inmates at Trousdale, that CoreCivic's alleged "constitutionally non-compliant staffing is just business as fu**ing usual" are squarely the type of inflammatory extrajudicial statements that create a substantial likelihood of material prejudice and poison a jury pool. (*Newby* Order, pg. 4; Exh. B, p. 15). Moreover, predictably, the documents he placed in the public record found their way to media outlets, further evidencing the likelihood of material prejudice. (Exh. B, p. 4).

Furthermore, much of the information/documents released would have been inadmissible at trial. (Newby Order, p. 5). His personal commentary was clearly inadmissible. Most obvious, his commentary would have been inadmissible because it is highly prejudicial. But his commentary (and the documents publicly disseminated) also contained inadmissible hearsay, inadmissible opinion testimony, and was irrelevant. (Exh. B, pp. 15-16). And the Court correctly

held that Plaintiff's counsel's comments met none of the applicable exceptions to the Rule. As a result, Local Rule 83.04 prohibited his many extrajudicial statements. Allowing Plaintiff's counsel to proceed with engaging in similar conduct in this case would likewise violate the Rule. As a result, his motion must be denied.

**B. Rule 83.04 is constitutional.**

Plaintiff's counsel contends that Local Rule 83.04 is unconstitutional in restricting his highly prejudicial public speech. He is incorrect.

           *i.*       *Local Rule 83.04 is constitutional on its face.*

A claimant who makes a facial attack on a law is requesting "strong medicine." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). "[F]ederal courts do not lightly uphold facial challenges" because such efforts do not seek to invalidate laws in concrete, factual settings but to "leave nothing standing." *Warshak v. United States*, 532 F.3d 521, 528 (6th Cir. 2008) (en banc). Further, "[c]laims of facial invalidity often rest on speculation[,] . . . raise the risk of premature interpretation[,] . . . run contrary to the fundamental principle of judicial restraint[,] . . . [and] threaten to short-circuit the democratic process." *Wash. State Grange v. Wash. State Republican Party*, 128 S. Ct. 1184, 1191 (2008) (citations omitted). For these reasons, facial invalidation of a statute is a remedy that courts employ "sparingly and only as a last resort." *Broadrick*, 413 U.S. at 613.

Importantly, trial courts are constitutionally mandated to minimize the effects of prejudicial pretrial publicity. *Gannett Co. v. DePasquale*, 443 U.S. 368, 378 (1979). Indeed, the court's duty is of paramount importance. Minimizing the effects of prejudicial pretrial publicity protects the interest of both the public in the fair administration of justice. *United States v. Noriega*, 917 F.2d 1543, 1549 (11th Cir. 1990) (per curium). To that end, speech can be restrained to protect the

above concerns. "[A]lthough litigants do not 'surrender their First Amendment rights at the courthouse door,' those rights may be subordinated to other interests that arise in this setting." *Seattle Times v. Rhinehart*, 467 U.S. 20, n. 18 (1984). Such restraints on speech applies to attorneys as well. *Gentile v. State Bar of Nev.*, 501 U.S. 1030 (1991). As Justice Cardoza once wrote, "[m]embership in the bar is a privilege burdened with conditions." *In re Rouss*, 221 N.Y. 81, 84 (1917). One of those conditions is limitations on attorney's free speech. Undeniably, attorney speech is limited in many different contexts in which the speech of the public at large is not restrained. Significant limitations are placed on attorney speech in the courtroom. *Gentile*, 501 U.S. at 1071. Limitations are placed on attorney advertisements. *Id*. Limitations are placed on attorney solicitation. *Id*. And as the Court in *Gentile* held, limitations of speech can be placed on attorney's speech that "the lawyer knows or reasonably should know will be disseminated by public communication and will have substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." In fact, the *Gentile* Court held that the latter restriction on attorney speech was constitutional and narrowly tailored to achieve the substantial interest in preventing prejudice in adjudicative proceedings. *Id*. at 1076.

Based on *Gentile*, Plaintiff's counsel cannot sincerely challenge the constitutionality of the language of Section (1) of Local Rule 83.04. The language is pulled directly from ABA Model Rule 3.6 on "Trial Publicity." And it almost exactly mirrors the language of the approved language in *Gentile*.

Section (2) is also constitutional. Like Section (1), Section (2) is pulled directly from ABA Model 3.6. The comment to the model rules makes clear that "certain subjects that are more likely than not to have a material prejudicial effect on a proceeding." ABA Model R. 3.6 cmt. 5. This Court's rule simply codifies those subjects. *Compare id. with* L.R. 83.04. Moreover, Section (2),

like Section (1), is narrowly tailored to achieve the court's vital interest in preventing prejudice in its proceedings. Section (2) makes clear that only certain types of speech fall under its purview, namely, those that are "more likely than not to have a material prejudicial effect on a proceeding." Because the Rule is narrowly tailored and only restricts certain types of speech that are likely to prejudice future proceedings, Section (2) passes constitutional muster.

Notwithstanding, Plaintiff's counsel asserts that placing the burden of proof on the speaker to show speech should not be restrained is unconstitutional. But this is not the case. None of the cases cited by Plaintiff's counsel deal with attorney speech, which, as already explained, can be limited in ways the public's speech cannot. Moreover, in other similar contexts, the Sixth Circuit has shifted the burden to the speaker. For instance, in *Campbell v. Bradshaw*, the Sixth Circuit presumed "prejudice from pretrial publicity occurs where an inflammatory, circus-like atmosphere pervades both the courthouse and the surrounding community[.]" *Campbell v. Bradshaw*, 674 F.3d 578, 593 (6th Cir. 2012) (quoting *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007)). Similar concerns are present here. The Court's local rule is simply concerned with promoting a fair trial, something which the categories of speech prohibited in Section (2) encroach upon.

ii.     *Local Rule 83.04 is constitutional as applied.*

The theory of our judicial system is that the conclusions to be reached in a case will be induced only by evidence and argument in open Court, and not by any outside influence, whether of private talk or public print. *Patterson v. Colorado*, 205 U.S. 454, 462 (1907). Few, if any, interests under the Constitution are more fundamental than the right to a fair trial by "impartial" jurors, and an outcome affected by extrajudicial statements would violate that fundamental right. *Gentile v. State Bar of Nevada*, 501 U.S. at 1075.

Here, while it is currently unclear specifically what speech Plaintiff's counsel intends to make, Local Rule 83.04 is constitutional as applied to Plaintiff's counsel's repeated inflammatory speech in the past. As already explained, Plaintiff's counsel's speech over his public Twitter account (and through media outlets) clearly had a "substantial likelihood of materially prejudicing an adjudicative proceeding." Judge Frensley has already appropriately held as much. (*See Newby* Order). Comments such as calling the defendant (CoreCivic in this instance) a drug dealer, killer, and "death factory" have no place in the judicial system and should be prohibited. *See e.g.*, *Greene v. Demoss*, No. 3:20-CV-00578, 2021 U.S. Dist. LEXIS 153178, at *4 (W.D. La. Aug. 13, 2021) (entering a gag order prohibiting the plaintiff and the plaintiff's counsel from utilizing the media to attack the character, reputation, and credibility of the named defendants).

Further, not only did Plaintiff's counsel's speech have substantial likelihood of materially prejudicing an adjudicative proceeding, but it is also objectively false, something that is not protected by the First Amendment. *Garrison v. Louisiana*, 379 U.S. 64, 75 (1964) ("[T]he knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection."). Because Plaintiff's counsel's inflammatory tweets violate a constitutionally sound local rules and many are otherwise false, Local Rule 83.04 is not unconstitutional as applied.

## CONCLUSION

Based upon the foregoing, Plaintiff and Plaintiff's counsel's motion should be denied in its entirety.

Respectfully submitted,

PENTECOST, GLENN & TILLY, PLLC

By:     s/Nathan D. Tilly
        Nathan D. Tilly (#31318)
        Haynes T. Russell (#36923)
        *Attorneys for Defendants CoreCivic*
        *of Tennessee, LLC, Vincent Vantell,*
        *Chance Leeds, Carlisla Byars, and Keith Huggins*
        162 Murray Guard Drive, Suite B
        Jackson, Tennessee 38305
        (731) 668-5995 – Telephone
        (731) 668-7163 – Facsimile
        ntilly@pgmfirm.com
        hrussell@pgmfirm.com

        MCANGUS GOUDELOCK & COURIE

By:     s/Brian F. Walthart (w/permission)
        BRIAN F. WALTHART, 024777
        Post Office Box 198349
        201 4th Avenue N., Suite 1400
        Nashville, TN 37219
        Phone: (615) 499-7177
        Facsimile: (615) 5231496
        Email: brian.walthart@mgclaw.com
        ATTORNEY   FOR   HARDEMAN   COUNTY,
        TENNESSEE

## <u>CERTIFICATE OF SERVICE</u>

       The undersigned hereby certifies that a true and correct copy of the foregoing document was served via US District Court ECF system upon:

      Daniel A. Horwitz
      Melissa K. Dix
      Horwitz Law, PLLC
      4016 Westlawn Drive
      Nashville, TN  37209

      Brian F. Walthart
      Post Office Box 198349
      201 4th Avenue N., Suite 1400
      Nashville, TN 37219

on or before the filing date thereof.

      DATE:  This the 30th day of May, 2023.

                         By:    <u>s/Nathan D. Tilly</u>
                                 Nathan D. Tilly