| | | |
|---|---|---|
| G. MARIE NEWBY, Individually, and As Administratrix of THE ESTATE OF TERRY CHILDRESS, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action Number 3:22-CV-93 Chief Judge Waverly D. Crenshaw, Jr. |
| CORECIVIC OF TENNESSEE, LLC, as owner and operator of TROUSDALE TURNER CORRECTIONAL CENTER, DAMON HININGER, STEVE CONRY, RAYMOND BYRD, and SHAWNA CURTIS, | ) ) ) ) ) ) ) | Magistrate Judge Jeffery S. Frensley Jury Demand |
| Defendants. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR COMPLIANCE WITH LOCAL RULE 83.04 AND TO STRIKE

Pursuant to Local Rule 83.04 and Federal Rule of Civil Procedure 12(f), Defendants CoreCivic of Tennessee, LLC ("CoreCivic"), Damon Hininger, Steve Conry, Raymond Byrd, and Shawna Curtis respectfully move the Court to grant their Motion for Compliance with Local Rule 83.04 and to Strike. Defendants specifically move the Court to: (1) order that counsel for Plaintiff G. Marie Newby ("Newby") cannot disseminate any public communication that would interfere with a fair trial, including communications regarding this lawsuit or matters at issue in this lawsuit; (2) instruct counsel for Newby that they must remove all public communications within their control, including social media posts, that would interfere with a fair trial, including commentary regarding this lawsuit or matters at issue in this lawsuit; (3) order that counsel for Newby comply

with Local Rule 83.04; and (4) strike all Notices of Filing that Newby has submitted in this matter that were filed without any proper purpose, which would include Docket Entries 33, 37, and 38.

## I. **INTRODUCTION**

Defendants want and indeed are entitled to a fair trial with an impartial jury. Public statements of opposing counsel, Daniel Horwitz ("Mr. Horwitz"), have made the possibility of a fair trial potentially out of reach for Defendants. Continued public statements by Mr. Horwitz over the months before the December 2023 trial of this matter undoubtedly will deprive Defendants of a fair trial. Indeed, since this lawsuit was filed on February 11, 2022, Mr. Horwitz publicly has discussed his opinions regarding this lawsuit and the alleged underlying facts on multiple occasions. Some of these statements have referenced Terry Childress ("Childress") while others have referenced allegations that underlie this lawsuit, including claimed understaffing and violence at the Trousdale Turner Correctional Center ("Trousdale"), while still others have referenced documents that Mr. Horwitz obtained in this case and contends are relevant.



**News4 Investigates: Former Correctional Officer calls for increased staffing and medical care at Trousdale Turner Correctional Center**

By Caresse Jackman
Published: Feb. 28, 2022 at 7:39 PM CST

"'The thing you need to understand about CoreCivic is, they do not care when inmates in their custody die,' Horwitz said . . . 'Inmates are dying in their care who should not be! These are preventable deaths, and they would not be occurring if CoreCivic cared enough to staff its facilities. The problem is they don't!! And no one is making them!!' Horwitz said . . . 'These are not just complaints and they're not just allegations --there are state audits that are filed on file, they are public documenting the number of Class A incidents at this facility. Which is higher than any other facility in the state!' Horwitz said." (Caresse Jackman, "News4 Investigates: Former Correctional Officer calls for increased staffing and medical care at Trousdale Turner Correctional Center," WSMV4 (Feb. 28, 2022) (formatting amended).[1]

---

[1] Mr. Horwitz tweeted about this story on February 28, 2022, and provided a link to the same. In his tweet, Mr. Horwitz wrote: "TIL [Today I learned] I speak in exclamation points."

2

Mr. Horwitz's social media posts are direct, a necessary requirement of Twitter, yet are extraordinarily vicious in their verbiage. Certain of Mr. Horwitz's social media posts specifically mention Childress and contend that Defendants bear responsibility for his unfortunate death. Indeed, these posts call CoreCivic a "death factory" and contend that CoreCivic "kill[s]" people.



Mr. Horwitz's claims of understaffing and violence at Trousdale -- the precise allegations that are at issue in the pending lawsuit -- are the subject of multiple social media posts on Twitter that span several months. In those social media posts, Mr. Horwitz contends that Defendants intentionally understaff Trousdale, permit inmate-on-inmate violence at Trousdale, and thus condone or have no concern regarding death of or injury to inmates incarcerated at Trousdale.





312510293.1

Along with this, Mr. Horwitz has filed in the public record documents that he obtained through a subpoena *duces tecum* that he issued in this matter and that he contends are relevant to this matter and then has posted the documents onto social media and commented about them on social media. These same documents somehow found themselves in the hands of local media outlets. Just last month, a local



"Attorneys suing Trousdale Turner on behalf of G. Marie Newby — whose son Terry Childress died while incarcerated last year — recently published a set of deposition transcripts and prison memos that were part of a different federal lawsuit from inmate Boaz Pleasant-Bey. The transcripts and memorandums were not publicly accessible until Newby's attorney, Daniel Horwitz, subpoenaed the records and filed them with her lawsuit, Horwitz said in a statement." (Liam Adams, "Trousdale Turner didn't accommodate Muslim inmates, briefly banned Quran, documents reveal," Tennessean (May 18, 2022) (formatting amended)).

media outlet conveniently picked up a CoreCivic-related story, relying upon the documents that were produced in response to the subpoena. While it is unclear who the local media outlet's source was for the document production, Mr. Horwitz showed his support for this story by posting about it on social media the very day it was released. It does not appear that Mr. Horwitz intends to stop his public commentary about this matter or about Defendants. Accordingly, Defendants are requesting that the Court take necessary precautions to help alleviate the substantial risk of material prejudice to their right to a fair trial with an impartial jury caused by this conduct.

## II.  <u>FACTUAL BACKGROUND</u>

Mr. Horwitz has provided public commentary regarding Childress and the allegations that underlie this lawsuit since the lawsuit was filed on February 11, 2022. The commentary strikes at the heart of the allegations in this lawsuit and what Newby must prove to potentially prevail at the trial of this matter on her claims against Defendants. Some of the public commentary specifically

312510293.1

discusses Childress's incarceration at Trousdale while still other public commentary discusses the allegations that are at issue in this lawsuit -- claimed understaffing and violence at Trousdale.



Some of the public commentary from Mr. Horwitz has been directed to news outlets that are located in Tennessee, including Channel 4 and The Tennessean, as previously referenced.

**News4 Investigates: Former Correctional Officer calls for increased staffing and medical care at Trousdale Turner Correctional Center**



By Caresse Jackman
Published: Feb. 28, 2022 at 7:39 PM CST

"'The thing you need to understand about CoreCivic is, they do not care when inmates in their custody die,' Horwitz said . . . 'Inmates are dying in their care who should not be! These are preventable deaths, and they would not be occurring if CoreCivic cared enough to staff its facilities. The problem is they don't!! And no one is making them!!' Horwitz said . . . 'These are not just complaints and they're not just allegations --there are state audits that are filed on file, they are public documenting the number of Class A incidents at this facility. Which is higher than any other facility in the state!' Horwitz said." (Caresse Jackman, "News4 Investigates: Former Correctional Officer calls for increased staffing and medical care at Trousdale Turner Correctional Center," WSMV4 (Feb. 28, 2022) (formatting amended).

More recently, the public commentary has focused on documents that were obtained through a subpoena *duces tecum* (the "Subpoena") that was issued in this lawsuit. On April 8,

5

2022, Newby issued the Subpoena to Tricia Herzfeld ("Ms. Herzfeld") at Branstetter, Stranch & Jennings, PLLC.  Ms. Herzfeld and her firm represented former Trousdale inmate Boaz Pleasant-Bey in a lawsuit against CoreCivic and certain of its employees.  Through the Subpoena, Newby requested "[a]ll discovery, inclusive of deposition testimony, produced by Defendant CoreCivic, Inc., its current or former agents, and its current or former employees in MDTN Case 3:19-CV-00486, *Boaz Pleasant-Bey v. State of Tennessee, et al.*"  (Docket Entry 28).  The Subpoena set a date for compliance of May 4, 2022.  (*Id.*).  Defendants subsequently filed a Motion to Hold Response to Subpoena *Duces Tecum* in Abeyance and moved the Court to hold Ms. Herzfeld's response to the Subpoena in abeyance until certain procedural requirements had been satisfied. (Docket Entry 32).  The Court granted Defendants' Motion on May 12, 2022.  (Docket Entry 35). Defendants then filed a Motion to Quash the Subpoena on June 10, 2022.  (Docket Entries 42, 43).

Ms. Herzfeld produced certain documents on May 4, 2022 -- namely, those that had not been marked confidential or confidential attorneys' eyes only pursuant to a protective order that was entered in the Pleasant-Bey matter.  Later that same day, Newby submitted a Fourth Notice of Filing.  (Docket Entry 33).  The Fourth Notice of Filing attached all of the documents that Ms. Herzfeld produced, which exceeded 2,000 pages.  (*Id.*).  Newby did not explain why she found it necessary to file with the Court every document that Ms. Herzfeld produced to her.  (*Id.*).  Also that same day, Mr. Horwitz turned to his public Twitter account with nearly 8,000 followers to discuss the document production along with his personal opinions and views regarding CoreCivic. Among other things, the social media posts: (1) highlighted intentionally limited portions of documents that Mr. Horwitz obtained through the Subpoena; (2) contained commentary from Mr. Horwitz on documents that he contends are relevant to this matter; (3) contained opinion statements from Mr. Horwitz, including "[t]rue galaxy brain sh-t" and "I literally can't even;" and

312510293.1

(4) warned the media: "If you're a journalist who is interested in sh-t like this, I can assure you there are an almost uncountable number of mindblowing documents out there just waiting to be unearthed or pried loose with pretty minimal effort."  The social media posts have been liked or shared by multiple individuals, meaning that their true impact cannot be assessed simply by examining Mr. Horwitz's Twitter page.  Representative examples of the posts follow:



312510293.1

 **Daniel A. Horwitz** @danielahorwitz · May 4

Holy wow. @CoreCivic banned the Koran for a time at one of facilities:



3  ·  22  ·  59

 **Daniel A. Horwitz** @danielahorwitz · May 4

Holy shit



3  ·  2  ·  25

**Daniel A. Horwitz** @danielahorwitz · May 5

If you're a journalist who is interested in shit like this, I can assure you there are an almost uncountable number of mindblowing documents out there just waiting to be unearthed or pried loose with pretty minimal effort.



**Daniel A. Horwitz** @danielahorwitz · May 4

Holy wow. @CoreCivic banned the Koran for a time at one of its Tennessee facilities:

Show this thread

·  3  ·  10

**Daniel A. Horwitz** @danielahorwitz · May 5

.@CoreCivic didn't file mandatory prison rape reports for five months and virtually nobody in this state gives a shit.



**Daniel A. Horwitz** @danielahorwitz · May 4

I literally can't even

Show this thread



2  ·  10  ·  18

312510293.1

Also without association with any pleading or motion, Newby submitted a Fifth Notice of Filing on May 25, 2022. (Docket Entry 37). This filing purportedly attached additional documents that were produced in response to the Subpoena -- which collectively total 1,084 pages. (*Id*.). On the same day that the Fifth Notice of Filing was submitted, Mr. Horwitz turned to social media to provide his personal commentary about the document production -- a production that Mr. Horwitz contends is relevant to this lawsuit. Mr. Horwitz boasted that this lawsuit gave him "subpoena power" and then proceeded to make comments that have direct and specific bearing on the allegations in this lawsuit. He accused



**Daniel A. Horwitz** @danielahorwitz · May 25
We have more @CoreCivic documents. They reveal pervasive and extended non-compliance with staffing and other requirements at @TrousdaleTurner. They also reveal that @TNTDOC1 knows about all of it and that its former Commissioner lobbied to protect the company. Let's dig in. ▮



**Daniel A. Horwitz** @danielahorwitz · May 25
First, some context. We represent a mother whose son was murdered at @CoreCivic's Trousdale Murder Correctional Center, Tennessee's most dangerous and notorious prison. He was one of far too many CoreCivic victims. The case gives us subpoena power.

CoreCivic of non-compliance with staffing requirements, massive understaffing, falsifying staffing records, and violating constitutional obligations -- alleged conduct that Mr. Horwitz labels as "just business as f-cking usual" at the facility at issue in this lawsuit -- Trousdale. Below are representative examples of social media posts from Mr. Horwitz on May 25, 2022:






**Daniel A. Horwitz** @danielahorwitz · May 25

What else do we learn from these on-site compliance monitors? Well, we learn things like @CoreCivic is submitting falsified staffing records to @TNTDOC1, and that the TDOC is aware of it.



♡ 1   ⟲ 2   ♡ 9



**Daniel A. Horwitz** @danielahorwitz · May 25

Through subpoenas, we've been able to get documents about the prison that @CoreCivic produced in past cases but was able to keep hidden from public view. Like a document demonstrating that they banned purchase of the Quran and the Torah, but not the Bible.



tennessean.com
**Trousdale Turner didn't accommodate Muslim inmates, briefly banned...**
Mirroring cases around the country, Trousdale Turner prison failed to accommodate Muslim inmates, but not Christians, new records reveal.

♡ 1   ⟲ 2   ♡ 13



**Daniel A. Horwitz** @danielahorwitz · May 25

And the @TNTDOC1's Inspector General attests that "if the Commissioner wanted to," he could declare @TrousdaleTurner a security risk and assume control of the facility.







♡ 1   ⟲ 1   ♡ 5

**Daniel A. Horwitz** @danielahorwitz · May 25

Let's hear from one of the @TNTDOC1's on-site compliance monitors about the staffing problem at @TrousdaleTurner. Is it a secret?

No. The facility has literally never had compliant staffing levels. Never. And the TDOC knows it because it documents it.



♡ 1   ⟲ 3   ♡ 8

10



**Daniel A. Horwitz** @danielahorwitz · May 25
What about the TDOC's other on-site monitor? Did he get duped?

No. Leaving critical posts unstaffed there is "a common thing," he says. "At least once a day."

**Daniel A. Horwitz** @danielahorwitz · May 25
Past documents have showed MASSIVE understaffing: Something that everyone knows is true and that @TNCOT has repeatedly found was true during audits, but which @CoreCivic falsely denies at every opportunity (just ask @Caressei and others).

**Daniel A. Horwitz** @danielahorwitz · May 4
Holy shit
Show this thread



**Daniel A. Horwitz** @danielahorwitz · May 25
Let's talk about what @TNTDOC1 *can* do, though. The contract with @CoreCivic provides for liquidated damages when they fail to adhere to contract requirements. And boy have they failed to adhere. There have been "millions of dollars" in damages assessed for this facility alone.



**Daniel A. Horwitz** @danielahorwitz · May 25
But mostly we learn that massively deficient and constitutionally non-compliant staffing is just business as fucking usual at @TrousdaleTurner.
pic.twitter.com/piJJ5ADDKO

312510293.1

Most recently, Newby filed a Sixth Notice of Filing on May 26, 2022. (Docket Entry 38). This filing attaches the Declaration of Raymond E. Watison ("Watison"). (*Id.*). Watison is a prisoner of the State of Tennessee and makes various allegations regarding alleged violence and understaffing at Trousdale. (*Id.*). The Sixth Notice of Filing does not address the reason that Newby submitted it to the Court and thus placed it into the public record. Nevertheless, the very next day, Mr. Horwitz posted the Declaration onto



social media and encouraged others to contact him regarding alleged malfeasance at Trousdale.

The referenced tweets are just a few examples of many months' worth of Mr. Horwitz's inappropriate tweets regarding Defendants, alleged violence and understaffing at Trousdale, and the allegations in this lawsuit. When read together, it is clear that Mr. Horwitz's tweets are intended to, as Mr. Horwitz indicated in a retweet, "#EndCoreCivic." Relevant here, they are intended to, or at least have the effect, of depriving Defendants of their right to a fair trial. Mr. Horwitz's efforts have crossed a line as he is impeding on Defendants' right to have a fair trial with an impartial jury. Thus, Court intervention at this juncture is both appropriate and necessary.

### III. __LAW AND ARGUMENT__[2]

Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f).  The court may do so on its own or on motion made by a party.  *Id.*  Indeed, courts have the "inherent authority to strike any filed paper which [they] determine[] to be abusive or otherwise improper under the circumstances."  *Dowell v. Bernhardt*, 2019 WL 6909461, at *6 (M.D. Tenn. Dec. 19, 2019).  As such, courts may strike filings that do not comport with the applicable rules.  *See e.g.*, *Walker v. Bradley Cnty.*, 2011 WL 1877792, at *1 (E.D. Tenn. May 17, 2011) ("Both Plaintiff's affidavit and the affidavit of his counsel contain hearsay, improper opinion based on speculation, and facts irrelevant to the Court's ruling on the instant summary judgment motion.  Therefore, the Court will GRANT Defendants' motion to strike . . . and will order STRICKEN from the record Plaintiff's improperly filed affidavits.").

Along with this, courts have "long recognized that adverse publicity can endanger the ability of a defendant to receive a fair trial."  *Gannett Co. v. DePasquale*, 443 U.S. 368, 378 (1979).  Courts have "an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity."  *Id*.  In exercising their authority, courts should "adopt reasonable measures to avoid injury to the parties by reason of prejudicial or inflammatory publicity."  *CBS Inc. v. Young*, 522

---

[2] While not the focus of this brief, it is noteworthy that Mr. Horwitz's conduct is in violation of the Tennessee Rules of Professional Conduct (the "RPC").  Under the RPC, a lawyer "should use the law's procedures only for legitimate purposes and not to harass or intimidate others."  Tenn. Sup. Ct. R. 8, Preamble & Scope.  A lawyer also should not directly communicate with entities known or should be known as legally represented.  *See* Tenn. Sup. Ct. R. 8, RPC 4.2.  Mr. Horwitz has violated this requirement by sending direct communications to CoreCivic and specifically by directly tagging CoreCivic in social media posts that are relevant to this lawsuit.

312510293.1

F.2d 234, 241 (6th Cir. 1975). This Court has adopted such measures under Local Rule 83.04, which provides in relevant part as follows:[3]

> A lawyer who is participating in or has participated in the investigation or litigation of a matter, either directly or indirectly, must not make any extrajudicial statement (other than a quotation from or reference to public records) that the lawyer knows or reasonably should know will be disseminated by public communication and will have substantial likelihood of materially prejudicing an adjudicative proceeding in the matter, including especially that will interfere with a fair trial.

L.R. 83.04(a)(1). The Rule further provides that certain types of statements are "more likely than not to have a material prejudicial effect on a proceeding," and are presumptively prejudicial. L.R. 83.04(a)(2). These presumptively prejudicial statements include the following:

> (A)  Evidence regarding the occurrence or transaction involved;
>
> (B)  The character, credibility, or criminal record of a party, witness, or prospective witness;
>
> (C)  The performance or results of any examinations or tests or the refusal or failure of a party to submit to an examination or test; and
>
> (D)  Information that the lawyer knows or reasonably should know is likely to be inadmissible as evidence at trial or that would, if disclosed, create a substantial risk of prejudicing an impartial trial.

*Id*. They also include "inflammatory" pretrial publicity pervading the surrounding community. *See Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007); *Nevers v. Killinger*, 990 F. Supp. 844, 854 (E.D. Mich. 1997), aff'd, 169 F.3d 352 (6th Cir. 1999).

---

[3] "[T]he Supreme Court [has held] that a local rule prohibiting attorney speech that had a 'substantial likelihood of material prejudice' on a [] trial d[oes] not violate the First Amendment." *United States v. Wecht*, 484 F.3d 194, 204 (3d Cir. 2007), as amended (July 2, 2007) (citing *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1063 (1991)).

14

The issue of prejudicial extrajudicial statements has been addressed by the Southern District Court of Ohio in the similar case of *Aaron v. Durrani*, 2013 WL 12121516 (S.D. Ohio Oct. 1, 2013). In *Aaron v. Durrani*, the plaintiff's counsel referred to the defendant as "Butcher of Pakistan" and "posted various letters and transcripts of conversations with alleged 'informants' on counsel's website, blog, Facebook, and in pleadings, which directly concern [the plaintiff's] allegations against [the defendant] in this lawsuit before this Court." *Id*. at *1. In response, the defendant requested a gag order and argued that counsel's conduct imposed a substantial likelihood of prejudicing the defendant's right to a fair trial. *Id*. at *1-2. The court agreed and granted the request for a gag order. *Id*. at *2. The court reasoned: "'The Butcher of Pakistan,' the 'title' which the plaintiff's counsel has associated with [the defendant], is unquestionably racially inflammatory and prejudicial." *Id*. The court further reasoned that counsel's conduct "supports [the defendant's] request for a Gag Order prohibiting all counsel, their representatives, and the parties from making further statements to the press or via other social media outlets in order to preserve all parties' inalienable right to a fair trial by an impartial jury." *Id*.

As in *Aaron*, Mr. Horwitz has posted numerous inflammatory tweets about CoreCivic. Among other things, he has claimed that CoreCivic deals drugs, that CoreCivic has "kill[ed]" people, and that CoreCivic is a "death camp." He also has claimed that CoreCivic does not properly care for the inmates who are entrusted to its custody and specifically that neither CoreCivic nor the State of Tennessee "give[] a sh-t" about the inmates who are incarcerated at Trousdale. He is wrong. He also is violating Local Rule 83.04. There is no difference

15

between the public statements that Mr. Horwitz has made and the public statements that counsel made in *Aaron*. They severely impact the ability of Defendants to obtain a fair trial.

Along with this, the public comments that Mr. Horwitz has made are presumptively prejudicial under Local Rule 83.04(a)(2). As an initial matter, these comments are relevant to the "occurrence or transaction involved." L.R. 83.04(a)(2)(A). Many of the comments pertain to Childress specifically or to alleged understaffing and violence at Trousdale -- claims that are directly at issue in this action.



Indeed, by filing the Fourth, Fifth, and Sixth Notices of Filing, Mr. Horwitz concedes that he believes the documents obtained through the Subpoena and his comments regarding those documents are relevant to this action. Second, Mr. Horwitz's comments do nothing but tarnish CoreCivic's character and credibility. L.R.



83.04(a)(2)(B). It is substantially likely that a juror's impression of CoreCivic would be tainted by the image painted by Mr. Horwitz's public comments. Mr.

Horwitz even tries to further instill this image based on similar, inappropriate statements about the undersigned counsel. Third, Mr. Horwitz's public comments pertain to the performance or results of examinations conducted regarding CoreCivic's operation of Trousdale, as many of the comments address the Tennessee Department of Correction's evaluation and oversight of CoreCivic, including through contract monitors who are located within the facility. Finally, Mr. Horwitz certainly knows or should know that his comments are inadmissible at trial and, more

16

importantly, that his comments create a substantial risk of prejudicing an impartial trial. Among other things, the comments contain inadmissible hearsay, contain inadmissible opinion testimony from counsel in the action, are irrelevant, and are highly prejudicial.

For example, a statement like this would have no place in the trial of this matter: "CoreCivic is the single worst thing ever to come out of Williamson County, which is an Olympic-pole-vault-high bar." More than this, Mr. Horwitz's public comments absolutely will prejudice Defendants' ability to obtain a fair trial. They are intended for vast public consumption and specifically are directed to Mr. Horwitz's nearly 8,000 Twitter followers and to the public at large. They have been retweeted and shared multiple times over, significantly increasing their reach. They also have been picked up by local media outlets with incredibly high volumes of readers and viewers, like Channel 4 and The Tennessean. The negative impact on Defendants and on their right to a fair trial with an impartial jury cannot be understated. And, if allowed to continue, the public comments by Mr. Horwitz only will worsen, particularly as the parties begin the written discovery and deposition phase of this lawsuit.

Certain documents that Mr. Horwitz attached to his social media posts admittedly are in the public record, but that is only because Mr. Horwitz placed them there himself when he filed thousands of pages of documents in this lawsuit through Notices of Filing. In other words, these documents improperly were placed in the public record. Local Rule 7.01 limits the type of documents that may be filed in support or in opposition to a motion. L.R. 7.01. A party may not circumvent these filing parameters by simply filing a notice with the Court. *See In re Ex Parte Caterpillar Inc.*, 2020 WL 1923227, *6 (M.D. Tenn. April 21, 2020) (holding that the notice of supplemental authority must be "disregarded" as it "exceed[ed] the parameters of a simple 'notice' filing").

Indeed, a lawyer cannot file whatever document he or she wants with the Court. Even more, a lawyer cannot file thousands of pages of documents with the Court, contend that they thus are in the public record, and share them for public consumption with negative and prejudicial commentary that will impact a fair trial. Here, on the very day that Newby filed her Fourth and Fifth Notices of Filing, Mr. Horwitz immediately started making social media posts regarding the documents. He even shared them for public consumption through a publicly accessible Dropbox account. Defendants simply want a fair trial with an impartial jury. Mr. Horwitz's public statements already may have made that out of reach for Defendants. Continued public statements regarding Childress, Defendants, and the underlying allegations in this lawsuit certainly will deprive Defendants of their right to a fair trial with an impartial jury. It is clear that Mr. Horwitz will not stop until he is ordered to do so. Defendants, therefore, request that the Court stop this improper conduct that clearly violates Local Rule 83.04 and the foundations upon which the judicial system is based.



## IV. <u>CONCLUSION</u>

For these reasons, the Court should grant Defendants' Motion for Compliance with Local Rule 83.04 and to Strike. The Court specifically should:

(1)   Order that counsel for Newby cannot disseminate any public communication that would interfere with a fair trial to include communications regarding this lawsuit or matters at issue in this lawsuit;

312510293.1

(2)    Instruct counsel for Newby that they must remove all public communications within their control, including social media posts, that would interfere with a fair trial, including commentary regarding this lawsuit or matters at issue in this lawsuit;

(3)    Order that counsel for Newby comply with Local Rule 83.04; and

(4)    Strike all Notices of Filing that Newby has submitted in this matter that were filed without any proper purpose, which would include Docket Entries 33, 37, and 38.

Respectfully submitted,

/s/ Joseph F. Welborn, III
Joseph F. Welborn, III (#15076)
joe.welborn@klgates.com
Erin Palmer Polly (#22221)
erin.polly@klgates.com
Terrence M. McKelvey (#36531)
terrence.mckelvey@klgates.com
K&L Gates LLP
501 Commerce Street, Suite 1500
Nashville, Tennessee 37203
(615) 780-6600

*Counsel for Defendants CoreCivic of Tennessee, LLC, Damon Hininger, Steven Conry, Raymond Byrd, and Shawna Curtis*

## CERTIFICATE OF SERVICE

I certify that a true and exact copy of the foregoing has been served upon Filing Users via the electronic filing system and on other counsel via U. S. Mail, first-class postage prepaid, this June 10, 2022, on the following:

Daniel A. Horwitz
Lindsay E. Smith
Horwitz Law, PLLC
4016 Westlawn Drive
Nashville, Tennessee 37209

Brice M. Timmons
Craig A. Edgington
Donati Law, PLLC
1545 Union Avenue
Memphis, Tennessee 38104

/s/ Joseph F. Welborn, III